**Evelyn McADAMS, Plaintiff,**

v.

**Janet RENO, United States Attorney General in her official capacity and as agency head; and United States of America, Defendants.**

**No. 3–92 CIV 514.**

United States District Court,
D. Minnesota,
Third Division.

July 19, 1994.

---

The Cooper Law Firm by Stephen W. Cooper, Minneapolis, MN, for plaintiff.

David L. Lillehaug, U.S. Dist. Atty. by Lonnie F. Bryan, Asst. U.S. Atty., Minneapolis, MN, for defendants.

## ORDER

ALSOP, Senior District Judge.

This matter came before the Court on May 20, 1994 on the defendants' motion to dismiss or for summary judgment. In this employment discrimination action, Evelyn McAdams alleges that the United States Bureau of Prisons discriminated against her on the basis of her sex. McAdams further alleges that she was defamed by federal government employees. The government argues that each of these claims must be dismissed for lack of jurisdiction.

## I. BACKGROUND.

Evelyn McAdams began working for the Bureau of Prisons (the "BOP"), a division of the Department of Justice (the "DOJ"), at the Federal Medical Center in Rochester, Minnesota on September 30, 1984. She was terminated on May 6, 1992. McAdams alleges that, throughout her employment with the BOP, she was subjected to harassment and other discriminatory treatment based upon her sex. She further alleges that BOP employees retaliated against her after she complained about the discriminatory treatment. McAdams responded to this alleged discriminatory treatment by filing complaints and pursuing relief through several different administrative agencies and procedures.

In August of 1991, McAdams received a fourteen-day suspension, allegedly for failing to appropriately respond to an emergency situation involving an altercation between inmates. On August 30, 1991, McAdams filed a grievance regarding the investigation that led to her suspension. An arbitration hearing was scheduled under a negotiated grievance procedure for August 12, 1992.

By letter dated November 8, 1991 from Warden Peter Carlson, McAdams was informed that she was being demoted from her position as Materials Handler Foreman to Senior Correctional Officer, effective November 16, for the following reasons: inattention to duty; showing favoritism toward an inmate; and failure to follow proper procedures in the performance of her duties as a Materials Handler Foreman.

On November 14, 1991, McAdams filed an EEO complaint (No. P–91–8056) with the DOJ[1] alleging thirteen separate charges of discrimination and retaliation relating to her suspension and demotion (the "November 14, 1991 EEO Complaint").[2] On December 2, 1991, McAdams also appealed her demotion to the Merit Systems Protection Board (the "MSPB") (Appeal No. CH–0432–92–0142–I–1) (the "Demotion Appeal"). Administrative Judge Ansorge dismissed this appeal without prejudice on December 30, 1991. Judge Ansorge found that McAdams's appeal was premature under MSPB regulations because a final decision had not been issued on McAdams's EEO complaint and 120 days had not passed since she filed the complaint.

On February 28, 1992, McAdams filed a second EEO complaint (No. P–92–8244) with the DOJ alleging further harassment and retaliation relating to her suspension, demotion, and the accompanying investigations (the "February 28, 1992 EEO Complaint").

McAdams refiled her Demotion Appeal (CH–0752–92–0142–I–2) with the MSPB on March 13, 1992, approximately 120 days after she filed her November 14, 1991 EEO Complaint. On May 15, 1992, Administrative Judge Miksa dismissed this appeal without prejudice. Judge Miksa found that, although the appeal had been timely filed, dismissal without prejudice was appropriate because McAdams's previously scheduled arbitration hearing regarding the fourteen-day suspension had not yet been resolved. Since the BOP had relied on the suspension in its decision to demote and then remove McAdams from her position, Judge Miksa dismissed the appeal in the interests of efficiency and judicial economy until after the arbitration was resolved. Judge Miksa also decided, however, that the MSPB had jurisdiction to adjudicate the appeal as a "mixed case." Therefore, the appeal was dismissed, and McAdams was given leave to refile the appeal within twenty days after the arbitrator's decision was issued, but no later than six months from the date Judge Miksa's decision became final. The DOJ's petition for review of this order was denied by the MSPB on August 25, 1992.

On May 6, 1992, McAdams was removed from her position and terminated. In a letter dated the same day, Warden Carlson set forth the following bases for this action: attempting to interfere, interfering and/or tampering with an official investigation; falsification of material facts in connection with an official investigation; carrying on an inappropriate relationship with inmates; and giving something of value to an inmate. McAdams appealed her removal to the MSPB on May 28, 1992 (Appeal No. CH–0752–92–0500–I–1) (the "Removal Appeal").

On June 26, the DOJ canceled McAdams's November 14, 1991 EEO Complaint. The DOJ determined that, because McAdams had filed a grievance under the negotiated grievance procedure, she had elected to pursue her discrimination complaint in that forum. Therefore, she was not entitled to a parallel EEO proceeding.

On June 30, 1992, McAdams filed this lawsuit in federal court. In her complaint, McAdams alleges federal discrimination and common law defamation claims relating to her suspension, demotion and removal. McAdams also refiled her Demotion Appeal with the MSPB on September 4, 1992 (Appeal No. CH–0752–92–0142–I–3).

After McAdams filed this lawsuit, the DOJ moved to dismiss her Demotion and Removal Appeals before the MSPB. In support of this motion, the DOJ argued that the discrimination and defamation claims alleged by McAdams in this lawsuit necessarily relate to the demotion and removal actions that McAdams was appealing to the MSPB. In op-

---

1. In contrast to private sector employees who are required to file their EEO complaints with the EEOC, 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.8, or a comparable state organization, 42 U.S.C. § 2000e–5(c); 29 C.F.R. § 1601.13, federal sector employees must initially file their complaint with the agency that allegedly discriminated against them, 42 U.S.C. § 2000e–16(b); 29 C.F.R. § 1614.106(a).

2. Although this EEO complaint is dated November 12, 1991, it was received by the DOJ on November 14. Therefore, it is referenced throughout the various exhibits as either the November 12, 1991 or the November 14, 1991 complaint.

posing the motion to dismiss, McAdams's counsel argued that the discrimination claims alleged in this lawsuit preceded both the demotion and the removal actions that were before the MSPB.[3]

Judge Miksa denied the DOJ's motion to dismiss on September 10, 1992. In his decision, Judge Miksa found that both the Demotion Appeal and the Removal Appeal were properly before the MSPB and that the MSPB had jurisdiction to adjudicate the issues raised in those appeals. Judge Miksa further found that McAdams's defamation claims were irrelevant to the issues raised in her MSPB appeals. Accordingly, the DOJ's motion to dismiss was denied.

McAdams's appeals came on for a hearing before Judge Miksa on October 26 and 27, 1992. On February 19, 1993, Judge Miksa issued his "Initial Decision," which reversed the DOJ's actions and ordered the agency to reinstate McAdams to her former position with full backpay. The DOJ's petition for review of Judge Miksa's decision was denied by the MSPB on June 14, 1993.

On July 6, 1993, the DOJ dismissed McAdams's February 28, 1992 EEO Complaint because it found that the claims McAdams alleged in this lawsuit incorporated the allegations in her EEO complaint. McAdams appealed this decision to the EEOC, which affirmed the DOJ's dismissal.

In summary, the procedural history of this lawsuit involves three separate adverse employment actions suffered by McAdams during her tenure at the BOP. First, McAdams received a fourteen-day suspension. She grieved this suspension through her union under a negotiated grievance procedure. The record does not reflect the outcome of the arbitration hearing. Second, McAdams was demoted to Senior Correctional Officer. She appealed this action as a mixed case to the MSPB. Third, McAdams was removed from her position and terminated. She also appealed this action as a mixed case to the MSPB. The MSPB found for McAdams on both appeals, reversed her demotion and re-

moval, and ordered the DOJ to reinstate her with full backpay.

■ The government argues in this motion that McAdams's Title VII claim must be dismissed because the issues presented by that claim were adjudicated by the MSPB and have not been properly presented to this Court for judicial review. In response, McAdams contends that her Title VII claim should survive, independent of the MSPB decision, because it involves conduct and seeks relief that the MSPB did not and could not address.

The government further argues that McAdams's defamation claim must be dismissed because it is barred under the Federal Tort Claims Act. In response, McAdams contends that her defamation claim involves statements made outside the scope of the declarants' employment, and therefore the claim does not fall under the Federal Tort Claims Act.

## II. ANALYSIS

### A. Title VII

The MSPB is an independent, quasi-judicial, federal administrative agency established under the Civil Service Reform Act of 1978. *See* 5 U.S.C. § 1201. The MSPB provides a forum in which federal employees can appeal significant adverse employment actions taken against them. *See* 5 U.S.C. § 7701. In a "mixed case" appeal, an employee "alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap, or age." 29 C.F.R. § 1614.-302(a)(2). A mixed case appeal is adjudicated under 5 U.S.C. § 7702. This statute and its accompanying regulations[4] provide that, in a mixed case appeal, the MSPB is authorized, and in fact required, to "decide both the issue of discrimination and the appealable action." 5 U.S.C. § 7702(a)(1). The MSPB must make its decision within 120 days. The employee may then file an action in federal

---

3. McAdams was represented by different counsel in her MSPB appeals.

4. The MSPB regulations are set forth at 5 C.F.R. §§ 1201.151–1201.175. The EEO regulations are set forth at 29 C.F.R. §§ 1613.401–1613.421.

district court or seek administrative review with the EEOC. 5 U.S.C. § 7702(a)(3).

If the employee seeks administrative review with the EEOC, the EEOC has 30 days to decide whether to hear the case. 5 U.S.C. § 7702(b)(1). If the EEOC declines review, or if the EEOC accepts review and affirms the MSPB's decision, the employee may then proceed to district court. 5 U.S.C. § 7702(b)(5)(A). If, however, the EEOC accepts review and reverses the MSPB, the case is remanded to the MSPB for further consideration. 5 U.S.C. § 7702(b)(3)(B), (b)(5)(B). After further consideration, the MSPB either adopts or rejects the EEOC's findings. 5 U.S.C. § 7702(c). If the MSPB adopts the EEOC's findings, the employee may then seek judicial review. 5 U.S.C. § 7702(c). If, however, the MSPB rejects the EEOC's findings, a special panel with members from both the EEOC and the MSPB is convened to make a final decision. 5 U.S.C. § 7702(d)(1). The decision of this panel is then subject to judicial review. 5 U.S.C. § 7702(d)(2)(A). Judicial review from mixed cases lies with federal district courts, where an employee is entitled to have his or her discrimination claims tried de novo. 5 U.S.C. § 7703(b)(2), (c). *See generally, Washington v. Garrett,* 10 F.3d 1421, 1428 (9th Cir.1993); *American Fed'n of Gov't Employees, Local 2052 v. Reno,* 992 F.2d 331, 332–33 (D.C.Cir.1993); Peter B. Broida, *A Guide To Merit Systems Protection Board Law & Practice* 1401–1525 (11th ed. 1994); Earnest C. Hadley, *A Guide To Federal Sector Equal Employment Law & Practice* 756–83 (6th ed. 1993).[5]

McAdams's Demotion and Removal Appeals both contained allegations of discrimination. In her Demotion Appeal, McAdams alleged that "coercion, harassment and intimidation were used throughout the investigation" and that "[t]he Warden's decision to reassign [her] from the Warehouse to Correctional Officer was a direct reprisal for [her] having filed an EEO/discrimination complaint." McAdams also attached a copy of her November 14, 1991 EEO Complaint to her Demotion Appeal. Similarly, in her Removal Appeal, McAdams alleged that "[t]he agency denied appellant due process by purposely utilizing both a proposing and deciding official named by appellant in her EEO complaint. The treatment of Appellant was disparate." She further alleged that the DOJ violated 5 U.S.C. § 2302[6] and 5 C.F.R. § 752[7] by "retaliating and harassing appellant for seeking to protect employee rights within the scope of EEO laws." McAdams also attached a variety of materials to her Removal Appeal that reiterated her charges of discrimination, harassment, and retaliation. Therefore, both appeals were properly adjudicated by the MSPB as mixed case appeals.

In his "Initial Decision," Judge Miksa concluded that the DOJ was unable to sustain the charges underlying McAdams's demotion and removal. Judge Miksa also found for McAdams on the issue of retaliation. Accordingly, Judge Miksa reversed both the demotion and the removal and ordered the DOJ to reinstate McAdams with full backpay. Judge Miksa's Initial Decision became final on June 14, 1993, when the MSPB denied review of Judge Miksa's Initial Decision (the "Final Decision"). The MSPB's Initial Decision and Final Decision each advised McAdams of her right to seek further review of Judge Miksa's discrimination findings by

---

5. The courts and commentators appear to be unanimous in their denunciation of this unnecessarily elaborate and confusing system of intertwined administrative jurisdiction and judicial review. *See, e.g., Washington,* 10 F.3d at 1428 (describing the "labyrinthine administrative and judicial review process"); Hadley, *A Guide to Federal Sector Equal Employment Law & Practice* at 756 (characterizing the processing of mixed cases as a "confusing and convoluted procedure"); Broida, *A Guide to Merit Systems Protection Board Law & Practice* at 1402 (criticizing the process as "so convoluted that it was destined to fail").

6. Title 5, Section 2302 of the United States Code provides that it is a "prohibited personnel practice" to "discriminate ... against any employee ... on the basis of race, color, religion, sex, or national origin, as prohibited under section 717 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–16)."

7. Title 5, Section 752 of the Code of Federal Regulations makes it unlawful for an agency to take an adverse employment action against an employee on the basis of any reason prohibited by 5 U.S.C. § 2302.

filing a petition with the EEOC or a civil action in federal court within thirty days. Understandably, McAdams chose not to seek further review of Judge Miksa's decision.

McAdams argues, however, that she is entitled to bring this lawsuit, independent of the MSPB proceedings, because the MSPB did not and could not address other discriminatory acts and other remedies available to her under the Civil Rights Act of 1991. Specifically, McAdams alleges that she is entitled to compensatory damages under section 102(a)(1) of the Civil Rights Act of 1991, codified at 42 U.S.C. § 1981a(a)(1). The issue presented by this motion, over-simplified perhaps, is whether these related claims should have been included in McAdams's MSPB appeals or whether she is entitled to pursue these claims separately in this court.[8]

McAdams's argument is premised on her assumption that she could not have brought a claim for compensatory damages as part of her MSPB appeals. The Court disagrees. Although the Court is unaware of any federal court or MSPB [9] decision addressing this issue, the EEOC has concluded that "the Civil Rights Act of 1991 ... ("CRA") makes compensatory damages available to federal sector complainants in the administrative process." *Jackson v. Postmaster General,* 01923399, 3499/B12, Fed.Eq.Opp.Rep. ¶ 933061 (1992). In *Jackson,* the EEOC stated:

> When a federal agency or the EEOC finds that a federal employee has been discriminated against, the agency must provide full relief. *See* 29 C.F.R. § 1614.501(a); 29 C.F.R. Part 1613, Appx. A. Under the CRA, this would include a payment of compensatory damages to an identified victim of discrimination on a make-whole basis for

any losses suffered as a result of the discrimination. *See* EEOC Notice No. 915.-002, "Enforcement Guidance: Compensatory and Punitive Damages Available under § 102 of the Civil Rights Act of 1991" (July 14, 1992). . . .

Section 102 of the CRA permits a complaining party pursuing an "action" under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., . . . to recover compensatory damages in the case of intentional discrimination. While it may be argued that the term "action" as used in the CRA refers only to a civil action in court, such an interpretation is not supported by the statutory language of the CRA as a whole and the principles of statutory interpretation.

. . . .

Although subsection 102(a)(1) does not make reference to the federal sector regulations implementing the Civil Rights Act of 1964, there is nothing in the legislative history of the CRA to indicate that Congress intended to [deny claimants compensatory damages during the administrative process]. The Commission finds that the most plausible reason for the failure of subsection 102(a)(1) to mention the administrative process is that Section 717 of the Civil Rights Act of 1964 explicitly provides for an administrative complaint process. . . .

Further support for the conclusion that compensatory damages are recoverable in the administrative process comes from the definition of "complaining party" in subsection 102(d)(1)(A). That subsection defines the term "complaining party" for purposes of section 102 as follows:

---

8. McAdams's complaint alleges discriminatory conduct that occurred both prior to and after November 21, 1991, the date of enactment for the Civil Rights Act of 1991. The Supreme Court recently held that Section 102 of the Civil Rights Act should not be applied retroactively. *See Landgraf v. USI Film Prod.,* —— U.S. ——, —— –——, 114 S.Ct. 1483, 1507–08, 128 L.Ed.2d 229 (1994). For the purposes of this motion, however, the Court will assume that all of the alleged discriminatory conduct constituted one "continuing violation" and was therefore actionable under the new provisions.

9. In *Wilson v. United States Postal Service,* 38 M.S.P.R. 156, 158 (1988), the MSPB held that an employee was not entitled to compensatory-type damages because "compensatory damages other than back pay and lost work benefits are not available under Title VII." *Wilson,* however, predates the Civil Rights Act of 1991, which expressly makes compensatory damages available to Title VII litigants under certain circumstances.

The term "complaining party" means—in the case of a person seeking to bring an action under subsection (a)(1), the [EEOC], the Attorney General, or a person who may bring an action or proceeding under title VII of the Civil Rights Act of 1964....

. . . .

The definition of complaining party provided by subsection 102(d)(1)(A) relates directly back to subsection 102(a)(1) and expressly includes within the group of persons bringing an "action" under subsection 102(a), any person who may bring an action or proceeding under Title VII. Complaining party, as defined, is consistent with subsection 102(a)(2). The definition of a complaining party defines the scope of subsection 102(a)(1) to provide complainants with an option to pursue their damage remedy in either an "action or proceeding."

It is a cardinal principle of statutory interpretation that courts are required to give effect to every clause and word of a statute, if possible. *See United States v. Menasche,* 348 U.S. 528 [75 S.Ct. 513, 99 L.Ed. 615] (1955); *R.E. Dietz Corp. v. United States,* 939 F.2d 1, 5 (2d Cir.1991). When read together, subsections 102(a)(1), 102(a)(2), and 102(d) permit a complaining party under Title VII ... to obtain compensatory damages in either an action or proceeding. The plain meaning of the term "proceeding" includes administrative proceedings.

*Jackson,* 01923399, 3499/B12, at C–1—C–4 (footnotes omitted). The Court finds this reasoning persuasive and agrees with the EEOC's conclusion that compensatory damages are available to federal sector complainants in administrative proceedings.

Further support for this conclusion comes from the Ninth Circuit's recent opinion in *Washington v. Garrett,* 10 F.3d 1421 (9th Cir.1993). In *Washington,* a civilian employee of the United States Navy brought a mixed case appeal to the MSPB after her position was eliminated by a reduction-in-force. The MSPB found against the employee on each of her three separate discrimination claims. The employee sought further review of her discrimination claims before the EEOC. The EEOC upheld the MSPB's findings of no discrimination. The employee then sought judicial review by filing a civil action in district court. The district court concluded that the employee had failed to produce any evidence in support of her discrimination claims and granted the government's motion for summary judgment. *Id.* at 1427.

On appeal, the Ninth Circuit concluded that summary judgment was improper on the employee's race discrimination claim and reversed the district court on that issue. The Ninth Circuit then stated:

With respect to her discrimination claim, we note that the Civil Rights Act of 1991 broadened the remedies available to successful Title VII litigants. If on remand Washington establishes that the abolishment of her position was motivated by racial animus, she may be entitled to additional equitable relief and compensatory damages. *See* 42 U.S.C. § 1981a (providing for compensatory damages in certain Title VII cases); 42 U.S.C. § 2000e–5(g)(1) (providing for various forms of equitable relief for successful Title VII plaintiffs).

*Id.* at 1434–35 (citations and footnotes omitted). Implicit in the Ninth Circuit's statement that compensatory damages were available from the district court is the assumption that compensatory damages were also available in the underlying administrative proceedings. Any other interpretation would result in an anomaly whereby a federal employee could obtain more relief from the district court than was available from the various administrative proceedings. Such a system would encourage employees to either intentionally bypass the administrative process and go straight to district court or perfunctorily go through the administrative process and then seek judicial review to obtain full relief.

McAdams has not brought her discrimination claims to this Court seeking judicial review of a decision from the MSPB or the EEOC. Instead, McAdams argues that she is entitled to maintain an independent lawsuit addressing these claims. The Court disagrees. The record in this case reveals that

McAdams initially alleged a wide variety of discriminatory conduct in her MSPB appeals. However, at the hearing before Judge Miksa, she apparently abandoned all of these claims except for retaliation, which she raised as a defense to her demotion and removal. In his Initial Decision, Judge Miksa specifically stated that McAdams had raised no affirmative defenses other than retaliation.[10] Furthermore, in his decision regarding McAdams's attorney fee petition, Judge Miksa determined that McAdams's "counsel devoted a reasonable number of hours to reviewing the appellant's EEO defenses to the agency's actions and her then pending suspension action grievance, despite the appellant's ultimate determination to raise only a 5 U.S.C. § 2302(b)(9) EEO retaliation defense." Because McAdams failed to raise her other discrimination claims in the context of her MSPB appeals, this Court has no jurisdiction to consider them now. *See Hays v. Postmaster General of the United States,* 868 F.2d 328, 330 (9th Cir.1989) (per curiam); *Lizut v. Department of the Army,* 717 F.2d 1391, 1396 (Fed.Cir.1983). Therefore, McAdams's Title VII claim must be dismissed.

## B. DEFAMATION

McAdams alleges in her defamation claim that Brian Ross, an investigator with the Justice Department, Office of Internal Affairs, and Leo Vanwey, a Bureau of Prisons employee at the Rochester Federal Medical Center, made defamatory statements about her in the context of the investigation that led to her suspension. In her complaint, McAdams named Ross and Vanwey as individual defendants and specifically alleged that "[m]any of the statements of Defendants Vanwey and Ross were outside the work site and work hours, and were outside the scope of their duties."

Shortly after McAdams filed her complaint and before any of the defendants filed an answer, the Court received a motion for substitution from the government, together with a "Certification" from the United States District Attorney for the District of Minnesota.

In this certification, the United States Attorney stated that he had read McAdams's complaint and that he was "of the opinion that the defendants, Brian Ross and Leo Vanwey, were acting within the scope of their employment as employees of the United States at the time of the alleged incidents." The motion for substitution accordingly requested that, pursuant to 28 U.S.C. § 2679(b), the United States be substituted for the individual defendants. McAdams's counsel was served with the motion and the certification, but did not respond. On September 16, 1992, this Court, without a hearing, issued an order substituting the United States for the individual defendants, amending the title of this action accordingly, and dismissing the action against the individual defendants with prejudice.

The government now argues in this motion that McAdams's defamation claims are barred under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 2671–80, because the United States has not waived its sovereign immunity for "[a]ny claim arising out of … libel [or] slander," 28 U.S.C. § 2680(h), and because McAdams failed to file an administrative claim as required under 28 U.S.C. § 2675(a). McAdams concedes that her defamation claim fails if it is analyzed under the FTCA. However, McAdams argues that the United States Attorney's certification does not conclusively establish that the individual defendants were acting within the scope of their employment. Instead, McAdams argues, the United States Attorney's certification serves only as notice of the government's intent to defend the individual defendants and to indemnify them to the extent that their conduct is ultimately determined to be within the scope of their employment.

McAdams's indemnification argument is without merit. The substitution procedures set forth in 28 U.S.C. § 2679 were enacted in 1988 as part of the Federal Employee's Liability Reform and Tort Compensation Act (the "Liability Reform Act"), which amended the FTCA. Congress passed the Liability Reform Act in response to the Supreme

---

**10.** In MSPB mixed case appeals, allegations of discrimination and retaliation are presented as affirmative defenses to the agency's charges.

*See, e.g., Carter v. Small Business Admin.,* 61 M.S.P.R. 656, 658 (1994); *Carr v. Department of Defense,* 61 M.S.P.R. 172, 175 (1994).

Court's decision in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), "which held that the judicially created doctrine of official immunity does not provide absolute immunity to Government employees for torts committed in the scope of their employment." *United States v. Smith*, 499 U.S. 160, 163, 111 S.Ct. 1180, 1183, 113 L.Ed.2d 134 (1991).

> The Liability Reform Act establishes the absolute immunity for Government employees that the [Supreme] Court declined to recognize under the common law in *Westfall*. The Act confers such immunity by making an FTCA action against the Government the exclusive remedy for torts committed by Government employees in the scope of their employment.

*Id.* (footnote omitted). Nothing in the Liability Reform Act or the FTCA suggests that Congress simply intended to create a procedure for the government to indemnify its employees. *Cf. In re Turner*, 14 F.3d 637, 643 (D.C.Cir.1994) (Williams, J., concurring) (explaining that "[i]nstead of creating a right of indemnity . . ., Congress simply provided for the substitution of the United States as defendant in tort suits brought against government employees as to incidents within the scope of their employment").

The proper procedure for a substitution of parties under 28 U.S.C. § 2679 and the effect of such a substitution were addressed by the Eighth Circuit in *Brown v. Armstrong*, 949 F.2d 1007 (8th Cir.1991). In *Brown*, the Eighth Circuit explained:

> [A] district court's substitution order [i]s based upon the Liability Reform Act, which was intended to restore full tort immunity to all federal employees acting within the scope of their employment. The immunity is conferred by [28 U.S.C.] § 2679(b):

>> "The remedy against the United States . . . for injury . . . from the negligent or wrongful act of any employee of the Government while acting within the scope of his office or employment is exclusive. . . ."

> The immunity is triggered when the Attorney General or his designate (here, the U.S. Attorney) certifies that federal employees have been sued for conduct within the scope of their employment. "Upon certification . . . the United States shall be substituted as the party defendant," § 2679(d)(1).

949 F.2d at 1010 (footnote omitted). In *Brown*, the Eighth Circuit also concluded that a certification by the Attorney General is subject to judicial review on the issue of whether the employee's conduct was within the scope of his or her conduct. The court noted that, as in this case, "[s]ubstitution of the United States as defendant will frequently end the plaintiff's case, either because FTCA administrative remedies have not been exhausted, or because, under § 2680, some or all of the plaintiff's claims are simply not actionable against the United States." *Id.* at 1011. Therefore, the court held that a "district court [is] required to conduct at least limited judicial review of the Attorney General's scope-of-employment certification before substituting the United States as defendant." *Id.* (footnote omitted); *accord Forrest City Mach. Works, Inc. v. United States*, 953 F.2d 1086, 1088 (8th Cir.1992).[11]

---

11. At the present time, eight of the Circuit Courts of Appeals have held that the Attorney General's certification is subject to judicial review on the issue of scope-of-employment. *See Wood v. United States*, 995 F.2d 1122, 1130 (1st Cir.1993) (en banc); *McHugh v. University of Vt.*, 966 F.2d 67, 71–72 (2d Cir.1992); *Melo v. Hafer*, 13 F.3d 736, 746 (3d Cir.1994); *Henson v. National Aeronautics and Space Admin.*, 14 F.3d 1143, 1147 (6th Cir.) (per curiam), *modified*, 23 F.3d 990 (6th Cir.1994); *Hamrick v. Franklin*, 931 F.2d 1209, 1210–11 (7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 200, 116 L.Ed.2d 159 (1991); *Brown v. Armstrong*, 949 F.2d 1007, 1011 (8th Cir.1991); *Green v. Hall*, 8 F.3d 695, 698 (9th Cir.1993), *petition for cert. filed*, 62 U.S.L.W. 3775 (U.S. May 9, 1994) (No. 93–1776); *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1540–41 (11th Cir.1990), *modified*, 924 F.2d 1555 (11th Cir.), *and cert. denied*, — U.S. —, 112 S.Ct. 62, 116 L.Ed.2d 37 (1991). In three circuits, the Attorney General's certification is deemed conclusive and not subject to judicial review. *See Johnson v. Carter*, 983 F.2d 1316, 1320 (4th Cir.) (en banc), *cert. denied*, — U.S. —, 114 S.Ct. 57, 126 L.Ed.2d 27 (1993); *Garcia v. United States*, 22 F.3d 609, 611 (5th Cir.), *reh'g granted en banc*, (5th Cir. June 23, 1994); *Salmon v. Schwarz*, 948 F.2d 1131, 1143 (10th Cir.1991).

The Eighth Circuit's decision in *Brown* was issued on November 25, 1991. The government's certification and motion for substitution in this case were filed in August of 1992. The record in this case reveals that the Court did not undertake the limited judicial review required by *Brown* prior to granting the motion for substitution. Although the record also reveals that the McAdams failed to contest the certification when it was originally filed, her current arguments indicate that she did not intend to concede that the individual defendants were acting within the scope of their employment when they made the allegedly defamatory statements. Therefore, the Court will grant McAdams thirty days from the date of this order to present any evidence and written argument she may have supporting her challenge to the government's certification. The government will then have thirty days to respond with its evidence and written argument. After reviewing these submissions, the Court will make a determination regarding the propriety of its original order of substitution. The Court may also, if necessary, schedule an evidentiary hearing to resolve any factual disputes. *See Brown*, 949 F.2d at 1012.

■ While preparing her submissions, McAdams should bear in mind that she is not entitled to a jury finding on the issue of whether the original individual defendants were acting within the scope of their employment when they made the allegedly defamatory statements. *Id.* at 1011. This determination will be made by the Court, applying Minnesota law. *See Forrest City Mach. Works, Inc.*, 953 F.2d at 1088 n. 5. Moreover, the government's "certification, although subject to judicial review, is prima facie evidence that the employee's challenged conduct was within the scope of employ." *Brown*, 949 F.2d at 1012. Therefore, McAdams bears "the burden of altering the status quo" and "must come forward with specific facts rebutting the government's scope-of-employment certification." *Id.*

Accordingly, based upon a review of all the files, records, and proceedings, herein,

**IT IS HEREBY ORDERED** That the defendants' motion to dismiss Count I of the plaintiff's complaint for lack of jurisdiction is granted; and

**IT IS FURTHER ORDERED** That the plaintiff shall, within thirty days, show cause why Count II of her complaint should not be dismissed for lack of jurisdiction.