**Lawrence CHANEY, Plaintiff,**

v.

**Robert RUBIN, Secretary of the Department of the Treasury, Defendant.**

No. 96 C 6938.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 3, 1997.

James A. Flesch, Don E. Glickman, Gordon, Glickman & Flesch, Chicago, IL, for Lawrence Chaney, plaintiff.

Ernest Yi Ling, Asst. U.S. Atty., U.S. Atty's Office, Chicago, IL, for Robert Rubin, Secretary of Department of Treasury, an Agency of U.S., defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

Lawrence Chaney filed this Title VII suit alleging that his employer, the Department of the Treasury (Treasury), discharged him because of his race and in retaliation for his filing of several Equal Employment Opportunity (EEO) complaints. Treasury has filed a motion to dismiss or for summary judgment, in part on the ground that this Court lacks jurisdiction over the case. We agree, and we grant Treasury's motion to dismiss.

### I. Background

Following stints as a communications technician and specialist in the Air Force and Federal Protective Service, Chaney applied for similar work with the U.S. Customs Service (Customs), an agency within Treasury, in January of 1989. *See* Def.'s 12M ¶¶ 1–2, 6. As part of his application for that position, he completed form SF–86, a standard background form for national security and law enforcement personnel. *See id.* ¶ 7. That form inquired as to whether Chaney had been arrested for or charged with any of-

fenses within the past five years, and in it Chaney certified that he had been charged only once during that period. *See id.* ¶ 8. He was lying: he had been arrested in 1985 (for running a red light and driving with a suspended license), and in 1988 (for disorderly conduct, a charge to which he pled guilty), and he reported neither of these incidents on the form. *See id.* ¶ 9; Pl.'s 12N Ex. 1.

In January of 1989, Chaney began work for Customs as a Senior Enforcement Specialist, a position which primarily required that he answer radio and telephone calls from Customs field agents who were in need of assistance. *See* Def.'s 12M ¶ 6. Shortly thereafter, on April 7, he was arrested on a battery charge stemming from a barroom brawl. *See id.* ¶ 10. In his next SF–86 form (September, 1993), which his security clearance required that he file, Chaney did not disclose this arrest. *See id.* ¶ 15–17.

Meanwhile, trouble brewed on other fronts. As the result of a 14–day suspension in May of 1992, *see id.* Ex. 1 at 30, Chaney filed an EEO complaint, a formal administrative charge of discrimination, in January of 1993, alleging that his supervisors denied him the sick leave he had requested on account of his back problems. *See id.* ¶ 13, Ex. 2. Chaney checked the "Color" box (not the "Race" box, though he testified at his deposition that the EEOC later corrected the form and told him that race, not color, was the proper box, *see id.* Ex. 1 at 32; 12N Ex. 7) on the complaint form to describe the basis of the discrimination against him. His 3–page narrative of the underlying events does not, however, ever mention any incident or facts which even remotely concern color or race. Instead, the complaint states that

I have been suffering … every [sic] since I was requested to participate in an investigation of one of my supervisors conducted by the Inspector General's Office in 1991. I have be [sic] punished for not using proper procedures for using leave, when I use the same procedures as everyone else that works there. I have been accused of not calling and informing my supervisor when I take leave when in fact I have contacted them on every occasion that I have requested leave.

Def.'s 12M ¶ 13, Ex. 2. Chaney's charge was never resolved, and he did not file suit in district court to pursue it. *See id.* Ex. 1 p. 32.

Chaney filed a second EEO complaint in December, this time alleging that his supervisors denied him sick leave in retaliation for his January EEO complaint. On this form, he checked only the "Retaliation/Reprisal for Involvement In Complaints Process" box, and his narrative again did not mention race discrimination. *See id.* ¶ 18, Ex. 3. The EEO counselor, who spoke with Chaney concerning this second complaint, filed a report indicating that "Mr. Chaney feels he is being punished because of his illness and that the treatment is racial" and that "Management stated that the issue is not racial." Pl.'s 12N Ex. 3. The cover sheet to the report, in the section concerning discriminatory actions, stated in full that "Mr. Chaney feels that he is being retaliated against because of prior complaints. He feels he is being punished because of an illness he has no control over." *Id.* This was the counselor's entire discussion of race. *See id.*

Nearly a year later, in September of 1994, Customs Electronics Technician Willie Cowart accused Chaney of sleeping on the job, a serious charge given that Chaney monitored the emergency calls and requests for backup from Customs agents in the area. *See* Def.'s 12M ¶ 19. This was not the first such complaint against him: the Special Agent in Charge of the Customs Field Office for Detroit had complained in 1992 that no one was answering calls during Chaney's shift. *See id.* Chaney denied sleeping on the job, and Customs conducted an inquiry (called a "red book" investigation) into the 1994 sleeping incident. Louis Cegala, the Director of Customs's communications management division, then issued Chaney a proposed notice of removal. *See id.* ¶¶ 22, 23. That notice advised Chaney of several grounds for his removal: his sleeping on the job, his nondisclosure of his 1989 arrest on his 1993 SF–86, and his failure (in violation of Customs rules) to inform his supervisor of his 1989 arrest. *See id.* ¶ 23. It also stated that Cegala took into account Chaney's suspensions in 1991 (for being absent without

leave) and in 1992 (for security violations, negligent performance of duty, sleeping on the job, failure to follow proper procedures, and absence without leave) when considering whether to propose Chaney's removal. *See id.* Ex. 5.

In March of 1995, Chaney filed a third EEO complaint, in which he again complained about his supervisors' refusal to grant him appropriate sick leave. He did not mention his pending termination. *See id.* ¶ 24. This complaint was marked as raising both "Race" and "Retaliation" claims, though Chaney's narrative, like the ones he provided with his prior 2 EEO complaints, concerned only retaliation. *See id.* Ex. 6.

Chaney's final notice of termination arrived from Leonard S. Walton, the Deputy Assistant Commissioner (Office of Investigation) on September 26, 1995, and it gave the same reasons as Cegala's proposed notice of termination as to why Chaney's employment was to end. *See id.* ¶ 25. It also notified Chaney of his right to contest the termination decision, either via the filing an EEO complaint with Customs or via an appeal to the Merit Systems Protection Board (MSPB). *See id.* Ex. 7. Chaney chose the latter route and filed an appeal with the MSPB in October, 1995. *See id.* ¶ 26. In his appeal form, which specified that he was represented by counsel, Chaney asserted that his discharge violated the law because (1) he was discharged without just cause; (2) actions were taken against him because of his race; (3) actions were taken against him in retaliation for his previous EEO complaints; and (4) the actions taken against him violated the Rehabilitation Act. *See id.* Ex. 8. In the part of the Appeal Form which required that he "indicate, by specific examples, how [he] was discriminated against," Chaney stated in full: "I believe this Action [i.e. his discharge] was executed because of prior EEOC complaints file. I believe this is retaliation for me filing those EEOC complaints. The employee that stated he saw me sleeping was a good friend of management." *Id.* Ex. 8.

Howard J. Ansorge, an administrative law judge (ALJ), found that the evidence supported all three of Customs's claimed grounds for Chaney's discharge and that these grounds constituted sufficient reasons for Customs to discharge him. *See id.* Ex. 10. His review of Chaney's affirmative defenses—petitioners assert matters such as retaliation and discrimination as affirmative defenses before the MSPB, *see McAdams v. Reno,* 858 F.Supp. 945, 952 n. 10 (D.Minn. 1994), *aff'd* 64 F.3d 1137 (8th Cir.1995)—was limited to Chaney's claim that his discharge was in retaliation for his EEO complaints. *See id.* Ex. 10 at 11. Judge Ansorge ruled that the discharge came so long after the first and second complaints that it was not likely in retaliation for them, and he reasoned that the discharge couldn't have been in retaliation for the third complaint since Chaney filed it several months after he received from Cegala the proposed notice of termination. *See id.* Ex. 10 at 12. In addition, he noted that Chaney had neither prevailed on any of the complaints nor shown that his supervisors suffered adverse consequences as a result of them, all of which led him to the conclusion that Chaney had failed to establish the truth of his retaliation claim by a preponderance of the evidence. *See id.* Ex. 10 at 12–13. Judge Ansorge's opinion did not address any ordinary (i.e. non-retaliation) discrimination claims or defenses.

Judge Ansorge's opinion informed Chaney of his right to appeal to either the Court of Appeals for the Federal Circuit or the full MSPB and then to the Federal Circuit. *See id.* Ex. 10. Chaney took his case to the full MSPB, which denied his petition, though it also modified *sua sponte* Judge Ansorge's opinion, stating: "In the initial decision, the administrative judge addressed the appellant's claim of reprisal for equal employment opportunity (EEO) activity. He neglected, however, to provide the appellant with mixed-case appeal rights. We have provided those rights here. *See Moran v. Department of the Air Force,* 64 M.S.P.R. 77, 88–89 (1994)." Pl.'s 12N Ex. 6. The Board's order informed Chaney that if he wished to pursue his discrimination claims, he could do so before either the Equal Employment Opportunity Commission (EEOC) or a district court; if not, he could pursue an appeal with the Federal Circuit. *See id* . Ex. 6.

Chaney chose to file a Title VII complaint before this Court, in which he asked for "reinstatement and damages to redress discrimination in employment." Compl. at 1. He specified that he was discharged in retaliation for filing the "three charges against his supervisors alleging racial discrimination," and he stated that race—not his alleged sleeping on the job—motivated his discharge. *Id.* at 6, 7, 11–14. Now before us is Treasury's motion to dismiss for lack of subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1).

## II. Analysis

Simplifying somewhat, the jurisdictional dispute in this case stems from Congress's desire to accommodate 3 intersecting policy goals. First, Congress yearned for a high degree of national uniformity in the interpretation of the civil service laws governing the rights and responsibilities of federal employees, lest different rules and standards govern federal employees performing the same functions in different locales. This led Congress to grant the Court of Appeals for the Federal Circuit exclusive jurisdiction over ordinary appeals from the MSPB, "an independent quasi-judicial federal administrative agency" which Congress authorized to review the civil service decisions (including terminations) of various federal employers. *McAdams,* 64 F.3d at 1141. Second, Congress wished for federal employees to have the same opportunity to present claims of employment discrimination as nonfederal employees—that is, through the filing of a Title VII suit in the appropriate district court. The Federal Circuit, the court of ordinary employment appeals for federal employees has, of course, no special expertise in discrimination matters. *See Williams v. Department of the Army,* 715 F.2d 1485, 1492 (Fed.Cir.1983) (Nichols, J., concurring) ("Let's face it, in the eyes of Congress the district and regional circuit courts have expertise on everything under the sun, while we have expertise only on selected tiresome technical matters not involving gut issues such as discrimination."). These first two concerns led to the third: a desire to avoid forcing federal employees who have both discrimination and civil service claims to endure the cost and confusion inherent in bifurcating their employment appeal. *See id.* at 1490–91 (discussing bifurcation and the legislative history of the underlying statutory scheme). In addition, allowing concurrent jurisdiction would raise the specter of forum shopping. *See generally Kean v. Stone,* 926 F.2d 276, 281 (3d Cir.1991) (describing the disagreement over whether jurisdiction was proper in the Federal Circuit or in the district court, a dispute made important by the fact that those courts would use different approaches to calculating attorneys fees).

■ Out of all of this grew our present system, which allows the MSPB to review both discrimination and civil service claims, *see* 5 U.S.C. § 7702(a)(1)(B), after which the employee's appeal rights depend on his claims. If his case raises only civil service claims, the Federal Circuit has exclusive jurisdiction. *See* 28 U.S.C. § 1295(a)(9); 5 U.S.C. § 7703(b)(1); *Williams* 715 F.2d at 1487. But if his case raises both discrimination *and* civil service claims (this is termed a "mixed case"), the district courts have exclusive jurisdiction. See 5 U.S.C. § 7703(b)(2); *Ballentine v. MSPB,* 738 F.2d 1244, 1245 (Fed.Cir.1984) (citing *Williams,* 715 F.2d at 1491). The compromise is not perfect, as the Federal Circuit no longer has jurisdiction over a certain number of cases raising civil service issues, but the severity of this problem may be significantly mitigated if the district courts (and regional courts of appeal) "give proper deference" to the Federal Circuit on civil service issues. *Williams,* 715 F.2d at 1493 (Nichols, J., concurring).

■ For obvious reasons, the courts do not allow a federal employee who wishes to pursue a Title VII claim to ignore the intricate procedures which have wound themselves around this statutory scheme. For example, once an employee has chosen which agency (MSPB, EEOC, or the employing agency) he wishes to adjudicate his claims in the first instance, he is required to stay on his chosen path and to exhaust his remedies there before proceeding onward. *See McAdams,* 64 F.3d at 1142. Any claim not fairly presented to the agency may not be brought before the district court (for failure to exhaust), and, more important to Chaney,

if discrimination claims are not brought before the agency, the district court lacks jurisdiction over the case. *See Williams v. Rice,* 983 F.2d 177, 180 (10th Cir.1993).

Chaney's district court complaint makes 2 claims: (1) his discharge was racially motivated, in violation of 42 U.S.C. § 2000e–16, and (2) his discharge was in retaliation for his prior EEO filings, in violation of 42 U.S.C. § 2000e–3. The question before us, then, is whether Chaney presented those claims and therefore exhausted his administrative remedies as to them such that this Court has jurisdiction over his case.

Chaney relies on two facts in arguing that he did present his claims of discrimination to the MSPB: (1) his allegation·before the MSPB that "he was discharged in retaliation for filing EEO complaints against his supervisors," and (2) his "appeal to the MSPB from his discharge specifically alleged that actions were taken against him"·because of his race. Pl.'s Br. at 6. Treasury agrees that Chaney made such allegations but states that allegations alone are not sufficient to support our jurisdiction over this case. It argues that this Court's jurisdiction depends on whether Chaney provided Treasury and Customs with "adequate information to permit it to investigate and fully redress the charge of discrimination," Pl.'s Reply at 2, and that Chaney abandoned his discrimination claim if in fact he ever had one, *see generally Blake v. Department of the Air Force,* 794 F.2d 170, 173 (5th Cir.1986); *Ballentine,* 738 F.2d at 1247.

We agree with Treasury. Of key importance in the judicial review of administrative rulings is the principle that "the issue [to be reviewed] must be raised with sufficient specificity and clarity that the [administrative] tribunal is aware that it must decide the issue . . . ." *Wallace v. Department of the Air Force,* 879 F.2d 829, 832 (Fed.Cir.1989), and our review of Chaney's administrative filings demonstrates their deficiency under this standard. We discuss each of Chaney's two claims in turn.

First, Chaney's complaint before this Court charges Treasury with ordinary (i.e. non-retaliatory) race discrimination for firing him. But the most distinguishing and consistent feature of Chaney's administrative filings underlying that claim is that in them he makes only a passing mention of race or discrimination. In his first EEO complaint, he checked the "Color" box on the complaint form but then, in 3 pages of narrative, never mentioned his own race, the race of his supervisors, or any other fact or circumstance which could give rise to even an inference of discrimination. Instead, he specified that his supervisors singled him out and denied him proper sick leave because of a request for his cooperation with an internal Customs investigation of one of them, which led to his being treated differently than "everyone else that works there," Def.'s 12M Ex. 2, not, for example, differently than the members of another race who work there. In his second EEO complaint, he claimed that his supervisors had continued to deny him proper sick leave in retaliation for his first complaint; the only glimmer of race here comes in the EEO counselor's report, which states simply that Chaney thought the treatment was "racial." He marked his third complaint (i.e. checked a box) as involving "Race," but his narrative there concerned only retaliation for the first 2 complaints. Finally, in his MSPB appeal form, he wrote that actions were taken against him because of his race, but he cited only retaliation for his 3 EEO complaints as the examples of discrimination against him. *Compare* 5 C.F.R. §§ 1201.153(a)(1) and 1201.163 (requiring specificity as to discrimination claims), *with* Def.'s 12M Ex. 8 (Chaney's MSPB appeal form).

■ Missing is any evidence that Chaney pursued any of his claims of race discrimination or that he presented any evidence concerning those claims or that he even alleged any facts in support of them. In keeping with that, Judge Ansorge's thorough opinion did not address any claim that Chaney was the victim of ordinary discrimination. It is, of course, Chaney's burden to demonstrate that this Court has jurisdiction over his case, *see Bally Export Corp. v. Balicar, Ltd.,* 804 F.2d 398, 401 (7th Cir.1986), but all the present record shows is that, at best, Chaney has made repeated, general, claims of race discrimination. Bald allegations, even if made

again and again, are insufficient to create jurisdiction in this Court. *See Cruz v. Department of the Navy*, 934 F.2d 1240, 1245 (Fed.Cir.1991) ("a petitioner's mere assertion cannot create jurisdiction"). Chaney did not, in an effort to carry his burden, show us that he presented evidence of discrimination to the MSPB, *see Stephens v. Connley*, 842 F.Supp. 1457, 1459 (M.D.Ga.1994) (citing *Meehan v. United States Postal Service*, 718 F.2d 1069, 1073 (Fed.Cir.1983)), *aff'd* 48 F.3d 537 (11th Cir.1995), and his MSPB appeal form did not adequately set forth a claim of discrimination, *see id.* (citing *Meehan*, 718 F.2d at 1073). In short, we agree with the court in *Stephens* that "The mere pleading of discrimination does not transform a claim properly before the Federal Circuit into a claim cognizable in district court," *id.*, and we find Chaney's discrimination claim defective on this count.

In an attempt to save his discrimination claim, Chaney cites *Cheek v. Western and S. Life Ins. Co.*, 31 F.3d 497 (7th Cir.1994), as annunciating "the standard to be employed in analyzing an assertion by defendant of failure to exhaust administrative remedies." Pl.'s Br. 7. *Cheek*, however, states only that a disgruntled employee may not file in the district court a complaint which contains allegations not stated in his EEOC Charge, except to the extent that those allegations are "like or reasonably related to the allegations of the charge." *Cheek*, 31 F.3d at 500 (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir.1976) (*en banc*)). This rule facilitates the EEOC's conciliatory role and provides the employer with notice as to the basis for the employee's claims. *See id.* (citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974)).

■ We doubt that the rule in *Cheek* applies to the exhaustion requirement for district court jurisdiction over mixed cases, as nonfederal employees merely alleging violations of Title VII before the EEOC (to

whom the *Cheek* rule applies) are not bound by the complex regulatory system faced by federal employees with identical claims. An nonfederal employee alleging a violation of Title VII must simply file his Charge with the EEOC and wait—he may obtain his "right to sue" letter no matter what the EEOC's findings and he may file suit in district court so long as his Charge put the EEOC and the employer on notice of his claims and at least allowed for the possibility of conciliation.[1] A federal employee like Chaney who chooses to proceed in front of the MSPB, by contrast, must actually press each of his claims there; any claim ignored is abandoned, and any claim abandoned cannot be brought before the district court. Otherwise Chaney's forum choice would be meaningless and he would be able to subvert Congress's complex regulatory scheme, *see Vinieratos v. United States*, 939 F.2d 762, 772 (9th Cir.1991), and thereby waste the time and effort of the administrative agencies tasked with adjudicating his suit, *see Hays v. Postmaster General of the United States*, 868 F.2d 328, 330 (9th Cir.1989) (quoting *Lizut v. Department of the Army*, 717 F.2d 1391, 1396 (Fed.Cir.1983)) ("We agree that '[a]llowing a party to withhold important issues from the board and later present them to this court would undermine the board's authority.'"). In any event, an allegation of discrimination is not "like or reasonably related to" an allegation of retaliation, *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 545 (7th Cir.1988) (citing *Ekanem v. Health And Hospital Corp.*, 724 F.2d 563, 573 (7th Cir. 1983)), so Chaney cannot rely on the retaliation claim (the viability of which we discuss below) he raised before the administrative agency to support his discrimination claim now.

■ Chaney's complaint secondly charges Treasury with retaliation, and Chaney did press a retaliation claim before the MSPB (though Judge Ansorge found it inadequate).

---

1. Further distinguishing the two situations is the fact that the lenient EEOC Charge rule grew out of the courts' recognition that few employees who file EEOC Charges are represented by counsel and thus cannot be expected to allege "each and every fact that combines to form the basis of each claim" in the Charge. *Cheek*, 31 F.3d at 500. Chaney, of course, had an attorney at the time of his MSPB appeal. *See generally Rana v. United States*, 812 F.2d 887, 889 n. 2 (4th Cir. 1987).

But while it is true that the government is bound by Title VII's retaliation provisions, *see, e.g., Hale v. Marsh,* 808 F.2d 616, 619 (7th Cir.1986) (citing *Ayon v. Sampson,* 547 F.2d 446, 449–50 (9th Cir.1976)), this does not confer on us jurisdiction over Chaney's retaliation claim. Some confusion here arises from the fact that federal employees may press before the MSPB two types of retaliation claims: one under the civil service laws, *see* 5 U.S.C. § 2302(b)(9), and one under Title VII, *see* 42 U.S.C. § 2000e–3. But even if a "claim for retaliation for engaging in protected EEO activities arises under both Title VII as a form of employment discrimination and pursuant to the prohibited personnel practice provisions of the" civil service laws, *Washington v. Garrett,* 10 F.3d 1421, 1435 (9th Cir.1993), a point Chaney does not argue, determining which type of retaliation claim Chaney actually pressed before the ALJ and MSPB is crucial, for only if Chaney presented arguments and evidence as to race discrimination underlying the retaliation is his a "mixed case" over which we have jurisdiction. *See Smith v. Horner,* 846 F.2d 1521, 1524 (D.C.Cir.1988) ("It is quite clear, moreover, that the Federal Circuit's [exclusive jurisdiction] position in *Williams* would apply whether the complainant was asserting a simple discrimination claim under Title VII or a retaliation claim under the same Title."). Chaney's MSPB appeal form specified that the retaliation at issue was for his filing of the 3 EEO complaints, and as we have already discussed, none of those complaints states an adequate claim for race discrimination. Instead, the only reasonable reading of Chaney's first EEO complaint—the complaint which was the basis of each of Chaney's later EEO complaints and of his MSPB appeal form—is that his supervisors acted against him due to his involvement in an internal Customs probe. While Chaney might, at his MSPB appeal, have stated and pressed a claim for unlawful retaliation under the civil service laws, *see* 5 U.S.C. § 2302(b)(9)(A), retaliation of this nature

does not violate Title VII and we thus lack jurisdiction over it.[2]

In support of his argument that we do have jurisdiction over his retaliation claims, Chaney also points to the MSPB's *sua sponte* decision to reopen his case and provide him with the "right" to appeal to the EEOC or to the district court since it considered his to be a mixed case. We disagree, however, that this action by the Board gives us jurisdiction over this case. We find informative the only case cited by the Board in support of its action, *Moran,* 64 M.S.P.R. at 88–89. There the Board decided that an ALJ must provide a federal employee with "mixed case appeal rights," which notify the employee of his right to pursue his claims before the EEOC or the district court, whenever the employee raises an allegation of discrimination, regardless of whether "the appellant made only a bare allegation of discrimination without articulating any cognizable basis for his discrimination claim under Title VII," *id.* (citing *Meads v. Veterans Admin.,* 36 M.S.P.R. 574, 582–84 (1988)), or whether "the appellant's discrimination complaint was frivolous," *id.* (citing *Heller v. Department of the Army,* 36 M.S.P.R. 675, 681 (1988)). This policy makes some amount of sense: the Board avoids the hassle of deciding the proper appellate routing for each case on a case-by-case basis, instead informing each employee of every conceivable appeal and allowing the reviewing court (either the district court or the Federal Circuit) to decide its jurisdiction for itself. In one such decision, however, the Federal Circuit held that it *does* have jurisdiction when an employee raises a frivolous discrimination claim, *Hill v. Department of the Air Force,* 796 F.2d 1469, 1471 (Fed.Cir. 1986), even though (1) the Federal Circuit does not have jurisdiction over mixed cases, and (2) *Heller* requires the Board to provide mixed case appeal rights to an employee with a frivolous discrimination claim. In Chaney's case, it seems likely that the Board informed him of his mixed appeal rights since the word

---

**2.** Chaney's complaint before this Court does not state any claim arising under the civil service laws. If it did, we would have considered *sua sponte* whether to transfer this case to the Federal Circuit. *See Hays,* 868 F.2d at 331; 28 U.S.C. § 1631. As the complaint now reads, however,

the Federal Circuit lacks jurisdiction over the case. *See Williams,* 715 F.2d at 1487 (stating that the district courts have exclusive jurisdiction over "cases of discrimination" under § 2000e–16).

"discrimination" appeared on his appeal form, but this Court, like the Federal Circuit, will continue to decide whether we have jurisdiction without regard to the notification the Board gives employees. *See McAdams,* 64 F.3d at 1143–44 ("McAdams has not cited any authority to the effect that the receipt of incorrect information from an administrative agency creates a right to sue in federal court," and "[s]he does not claim, and the record does not suggest, that any information she received affected her decision to abandon her discrimination claims at the MSPB . . . .").

### III. Conclusion

In sum, Chaney appears to have labored under the misconception that his doing nothing more than checking a box on a few forms or occasionally writing the word "race" or "discrimination" on his administrative filings entitled him to file suit in district court. It does not. Our jurisdiction depends on Chaney's having actually pressed a discrimination claim before the proper administrative authorities, and this he completely failed to do. Accordingly, we have no choice but to dismiss his suit. It is so ordered.