**Zoilo VELAZQUEZ RIVERA, Plaintiff,**

**v.**

**Richard J. DANZIG, et al., Defendant.**

**No. Civ. 99–1013(JP).**

United States District Court,
D. Puerto Rico.

Jan. 24, 2000.

Gino Negretti–Lavergne, San Juan, P.R., for plaintiff.

Lilliam E. Mendoza–Toro, U.S. Attorney's Office, District of P.R., Civil Division, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

## I. INTRODUCTION

The Court has before it Defendants' Motion to Dismiss,[1] (**docket No. 18**); Plaintiff's Opposition (docket No. 28); Defendants' Motion for Summary Judgment and Memorandum in Support Thereof (**docket No. 42**); Plaintiff's Opposition (docket No. 43); and Defendants' Reply (docket No. 44). In his Complaint, Plaintiff raises a plethora of claims against Defendants Richard J. Danzig, Secretary of the Navy; Ismael Pagán, the Navy's Director of Human Resources at Roosevelt Roads Naval Station in Ceiba, Puerto Rico ("Roosevelt Roads"); Efraín Feliciano, the Supervisor of the Fire Fighting Department at Roosevelt Roads; Pedro Ayala, the Lead Firefighter at the Fire Division, Air Operations in Vieques, Puerto Rico; and Bienvenido Burgos, the Fire Chief, Air Operations, Fire Division of Roosevelt Roads.[2]

In general terms, Plaintiff alleges that Defendants violated the Americans with Disabilities Act and the Rehabilitation Act when they incurred in a pattern of discrimination against him because of a handicap condition he developed while on the job. Plaintiff also contends that Defendants discriminated against him in violation of his Due Process rights,[3] Title VII of the Civil Rights Act of 1964,[4] the Age Discrimination in Employment Act and their local counterparts. Rather than starting with

---

1. Because Defendants in their Motion to Dismiss and Plaintiff in his Opposition attach numerous documents outside of the pleadings, which are necessary for the Court's analysis and adjudication, the Court shall convert Defendants' Motion to a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 12(b).

2. Plaintiff has also included "John Doe" and "Richard Roe," as Defendants with fictitious name. Because Plaintiff never amended the Complaint to change these names, the Court will limit its discussion to the Defendants who have been identified, named, and served.

3. Plaintiff brings this claim under 42 U.S.C. § 1983.

4. In his Complaint, Plaintiff cites to 42 U.S.C. section 2000e–3(8), as creating his cause of action under Title VII. Title VII, however, was amended to extend its coverage to federal workplace discrimination. *See* 42 U.S.C. § 2000e–16. Although Plaintiff cites to the Americans with Disabilities Act as a cause of action, because Plaintiff is bringing this suit as an ex-federal government employee against a federal agency, his action arises under the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 702–794(a), and not the ADA. The Rehabilitation Act provides the " 'remedies, procedure, and rights' of Title VII statute governing employment discrimination by the federal government, 42 U.S.C. § 2000e–16." *Farrell v. U.S. Dept. of Justice*, 910 F.Supp. 615, 618 (M.D.Fla.1995). In view of this overlapping relation between the ADA, the Rehabilitation Act, and Title VII, and that Plaintiff's only reference to Title VII is at best ambiguous, the Court shall proceed under the assumption that Plaintiff is including Title VII in the Complaint for purposes of illustrating the remedies he has under the Rehabilitation Act.

establishing the uncontested facts, the Court finds that it would be helpful to start by presenting the parties' allegations.

## II. PARTIES ALLEGATIONS

### A. Plaintiff's Allegations

Plaintiff Zoilo R. Velázquez ("Plaintiff") is a 55 year-old male who, until his dismissal in 1997, had worked for the U.S. Navy for 18 years. In 1988, Plaintiff began working as a firefighter at the Air Operations Division ("AIROPS"), Fire Division, in Roosevelt Roads and was stationed in Vieques, Puerto Rico.[5]

Since 1991 Plaintiff had been persecuted and discriminated against by Co–Defendant Fire Chief Bienvenido Burgos ("Burgos") and his subordinates. Plaintiff was falsely accused of fighting with a superior, was harassed, and was denied access to grievance proceedings.

Because of his role as a Union Representative, Plaintiff was the object of harassment by his immediate supervisor, Co–Defendant Efraín Feliciano ("Feliciano"). Since 1993, Feliciano told Plaintiff that he was going to fire him and engaged in a pattern of harassment and discrimination against Plaintiff. This pattern consisted of making false accusations against Plaintiff to tarnish Plaintiff's excellent service record. In 1993, Feliciano ordered Plaintiff to perform duties outside of his job description, and when Plaintiff refused, Feliciano suspended Plaintiff for seven days without pay. Feliciano tried to force Plaintiff to sign a resignation form in blank.

On January 14, 1994, Plaintiff suffered the first in a series of physical accidents while performing his job. Plaintiff injured his knee when Co–Defendant Lead Firefighter Pedro Ayala ("Ayala") changed the weights Plaintiff was lifting while training when he went to the bathroom. Supervisors did not perform an investigation or take measures relating to this accident. After this incident, Plaintiff was the sub-ject of verbal and written innuendoes and charges of defamation in the workplace. Feliciano labeled Plaintiff as "old butter man" ("viejo mantequilla" in Spanish) and liar, refusing to acknowledge his handicap condition.

On January 23, 1995, Plaintiff provided Burgos with medical evidence of a knee surgery he had undergone following his accident and handicap condition. Plaintiff was placed in light duty status and, on or around March 31, 1995, was assigned the position of Fire Communications Operator. Although Plaintiff provided him with medical certificates, Feliciano failed to acknowledge Plaintiff's condition. Despite Plaintiff's handicap condition, Ayala and Feliciano forced him to perform duties outside of his medical limitations and job description. He was denied information about his job description and ordered to wash and wax vehicles. On May 8, 1995, Plaintiff presented a written grievance to Feliciano and Burgos, but they ignored it. Plaintiff's orthopedic surgeon certified on June 19, 1995, that Plaintiff could not squat or "do excessive stairs." Feliciano, however, continued doubting the credibility of Plaintiff's handicap. On October 26, 1995, the U.S. Naval Hospital issued a notification of medical disposition placing Plaintiff on Light Restricted Duty for 30 days until November 17, 1995. Feliciano became hysterical and disbelieved the medical evidence. He intervened with Dr. Méndez, a general practitioner with the military medical staff, and forced him to certify that Plaintiff was able to perform regular duties. Against medical orders, Feliciano placed and commanded Plaintiff to work regular duties causing a second labor accident on November 1, 1995, as Plaintiff stepped down from a fire truck causing his left knee to snap. On November 3, 1995, Plaintiff requested a meeting with a Commander through Feliciano to discuss his medical condition and Feliciano denied the request.

---

5. Vieques, is an island municipality of Puerto Rico off the east coast of the main island.

Feliciano then suspended Plaintiff while he was on traumatic injury leave, claiming that Plaintiff had not provided medical documentation. Plaintiff, however, did produce medical documentation to Feliciano before the suspension. Plaintiff was placed on Absent Without Leave Status.

On December 4, 1995, Plaintiff presented a grievance to the Naval Inspector General who ignored Plaintiff's request. Three years later, the Office of the Naval Inspector issued a decision, without explanation, documentation or information, that no abuse of authority was found but that improper application of rules governing sick leave occurred.

On December 5, 1995, the U.S. Naval Hospital concluded that the previous diagnostic criteria by military and civilian doctors were correct and that Plaintiff could not perform the regular duties of a firefighter. Plaintiff was later offered a position in the tools and parts department on April 26, 1996, but he was also unable to perform these duties due to his handicap condition.

On May 19, 1996, Plaintiff suffered another labor accident while walking out of a restroom in the base. On May 23, 1996, a notice of proposed removal for Plaintiff was issued. On June 17, 1996, Plaintiff notified the Commander that he could not accept the position in the tools division because of his medical condition. On June 24, 1996, Plaintiff was terminated and advised to appeal through the merit system. Plaintiff, however, was not advised as to the procedures of filing a discrimination action. Plaintiff appealed through the Merit System, and the case was not heard on its merits.

On April 11, 1997, Plaintiff received an accommodation offer as Fire Communication Operator. On April 16, 1997, Plaintiff's counsel requested a settlement meeting with the Commanding Officer, and the Navy stated that Plaintiff should accept the accommodation or lose all his benefits. Plaintiff struck a deal and several responsibilities were eliminated from the position

of Fire Communication Operator. Plaintiff accepted the position and returned to work on May 12, 1997. On the day of his return, however, Plaintiff was sent home without any explanation after working approximately four hours. The Human Resources Department refused to answer Plaintiff's questions about his termination.

## B. Defendants' Allegations

On January 14, 1994, Plaintiff injured his left knee while on the job. This was a serious injury that resulted in absence from work for an extended period of time. Because of the accident, Plaintiff claims that he was unable to perform his duties as firefighter and suffered an "impairment for life." Plaintiff remained out of work until March 31, 1995. At that time, Plaintiff claims that he was pressured to return to work in a "light duty" capacity as Communication Operator.

On November 1, 1995, Plaintiff was taken off light duty based on an evaluation of his physical condition by Dr. Méndez, a physician at Roosevelt Roads. A short time after his return to unlimited duty, Plaintiff fell and reinjured his knee. Plaintiff subsequently filed a "grievance" with the agency's Inspector General alleging harassment and discrimination. Plaintiff filed additional "discrimination grievances" with the Inspector General in April 1996.

Plaintiff was notified on April 26, 1996, that he was not fit to perform his duties as a firefighter and would be offered a position of Tool and Parts Attendant to accommodate his disability. Plaintiff rejected this offer because he believed that he suffered from a permanent disability that prevented him from performing the job.

On May 19, 1996, Plaintiff injured his knee once again when he stepped into a drain hole while exiting a restroom. Plaintiff was placed on 45 days of injury leave. During his absence from work, Plaintiff was notified that his employment would be terminated because his disability prevent-

ed him from performing the essential duties of his position.

Plaintiff's termination from employment was an appealable action. The agency decision letter notified Plaintiff of his appeal to the U.S. Merit Systems Protection Board and the 20 day time limit to appeal. In an initial decision, Plaintiff's case was dismissed as untimely.

Plaintiff's age discrimination claim is untimely because he did not file a notice of intent to sue under ADEA within 180 days of the alleged incident of discrimination. Absent such notice, Plaintiff must comply with the exhaustion provision of Title VII, and has failed to do so.

As to the reasonable accommodation claim, the plaintiff must show that he has a disability; that was without reasonable accommodations; that he can perform the essential functions of the position he holds; and that he was discriminated against because of his disability.

The only timely claim before the Court arises from the attempt in May 1997 to employ the Plaintiff in a "light duty" position under the return to work program. An employer, however, is not required to create light duty jobs to accommodate an employee with a disability. If an employer offers reassignment to a temporary job, reasonable accommodation does not require that the employer make the light duty assignment permanent.

Finally, Danzig is the only proper defendant because an employee who is aggrieved by the final agency disposition of his complaint may file a lawsuit in which the head of the department shall be the defendant.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment serves to "assess the proof in order to see whether there is a genuine need for a trial." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990). Under Rule 56(c) of the Federal Rules of Civil Procedure, a summary judg-

ment is in order when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, [in this case the plaintiff,] reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Zambrana–Marrero v. Suarez–Cruz,* 172 F.3d 122, 125 (1st Cir.1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); *Goldman v. First National Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *Canal Insurance Co. v. Benner,* 980 F.2d 23, 25 (1st Cir.1992). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See Mack v. Great Atl. and Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir. 1989). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In a summary judgment motion, the movants, in this case Defendants, bear the initial burden of "informing the district court of the basis for their motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the movant does not bear the burden of proof at trial, it must show that no reasonable fact-finder could find that the nonmovant, in this case Plaintiff, has established the requisite elements of its claim. *Id.* at 325, 106 S.Ct. 2548. Once the moving party meets his burden of proof, the burden shifts to the non-movant, who may not "rest upon mere allegations or denials

of ... the pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." *Goldman,* 985 F.2d at 1116; *see Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In view of this standard and after studying the documents attached to the parties' briefs, the following facts are uncontested.

## IV. UNCONTESTED FACTS

A. Plaintiff Zoilo Velázquez ("Plaintiff") was born on September 23, 1943, and is a citizen of Puerto Rico with residence and domicile in Vieques, Puerto Rico.

B. Plaintiff began working for the Navy on or around 1967 in Long Beach, California. On or around, February 22, 1988, Plaintiff began working as a Firefighter, for the Navy at the United States Naval Station, Air Operations Department, in Roosevelt Roads, Puerto Rico.

C. Richard Danzig is the Secretary of the Navy and, as such, the department's head.

D. Israel Pagán was at all relevant times the Director and head of the Human Resources Department of the U.S. Naval Station in Roosevelt Roads.

E. Efraín Feliciano was all relevant times the Supervisor of the Fire Fighting Department of the Navy's Fire and Emergency Services Division in Vieques.

F. Bienvenido Burgos was at all relevant times the Fire Chief, of the Air Operations Department, Fire Division at Roosevelt Roads.

G. Pedro Ayala was at all relevant times the Lead Firefighter at the Fire Division, Air Operations in Vieques.

H. While working as a firefighter for the Navy in Vieques, Plaintiff became Union Representative (Union Shop Stuart for A & B Platoon) of Local F–97 International Association of Fire Fighters.

I. On January 14, 1994, Plaintiff suffered a torn left knee ligament at work while performing daily mandatory physical training. At one point, when resuming his exercises, Plaintiff suffered a serious injury to his left knee.

J. Plaintiff was entitled to Continuation of Pay (COP) from January 14, 1994 not to exceed 45 calendar days.

K. As a result of this labor accident, on December 1, 1994, Plaintiff underwent an arthroscopy and menissecctomy which precluded Plaintiff from exercising the duties as a firefighter and created an impairment for life. Plaintiff's orthopaedic surgeon said Plaintiff could return to work on March 6, 1995 with light duties and an eight-hour work period. The surgeon said Plaintiff could operate communications equipment, perform duty watch and clerical work.

L. Plaintiff continued in the Compensation Program until March 20, 1995 and was placed on light duty as Fire Communications Operator for a period of 120 days. Plaintiff, however, informed his immediate supervisor that he was not able to perform his regular duties as a firefighter due to intensive knee pain. As a result, a fitness for duty evaluation was requested for Plaintiff.

M. On November 1, 1995, Plaintiff sustained another on-the-job injury. This time, Plaintiff was stepping off a fire truck and his left knee gave way causing him to fall on his knee.

N. In November 1995, Plaintiff requested an appointment with the AIROPS Commander to clarify his medical condition.

O. On December 5, 1995, an individual by the name of D. Gant prepared a Fitness for Duty Evaluation report which informed that, according to

both civilian and military doctors, Plaintiff was not fit for duty as a firefighter due to his physical limitations.

P. On March 11, 1996, Dr. Méndez, an Occupational Medical Health Officer, concluded that although Plaintiff could not perform his duties as a firefighter, he was fit for duty as a tool and parts attendant based on that position's job description.

Q. On April 26, 1996, the Department of the Navy offered Plaintiff a position as a Tools and Parts Attendant in the Public Works Department, Vieques Area Shop. That position was in a different pay schedule. Plaintiff was, however, not allowed to retain the pay of his position as firefighter, but did not allow him to include additional compensation like premium pay of Cost of Living Allowance. Plaintiff had until May 10, 1996, to accept or decline that offer.

R. On May 10, 1996, Plaintiff had another on-the-job injury. While walking out of a restroom, he stepped on a drainage and his left knee snapped causing him to fall.

S. A memorandum dated May 23, 1996, was prepared by the Fire Chief, Fire and Emergency Services Division of the U.S. Naval Station on Roosevelt Roads, informing Plaintiff that he proposed to remove him from his position as Firefighter. Upon Plaintiff's request, his deadline to respond to the offer to occupy the position of Tools and Parts Attendant had been extended from May 10, 1996 to May 21, 1996. As of the date of the memorandum, Plaintiff had not responded to the offer. Plaintiff was given 10 days to respond to the notice of proposed removal.

T. Plaintiff requested an extension of time to respond to this notice of proposed removal. Plaintiff asked for a thirty day extension from May 28,

1996. The Navy gave Plaintiff until June 17, 1996.

U. By letter dated June 17, 1996, Plaintiff stated that he would not accept the position stating that he understood that the physical requirements as a tool and parts attendant did not meet the conditions set forth by his doctor because it called for moving frequently, climbing, lifting heavy equipment, carrying tool boxes, kneeling, and squatting, all acts which are hazardous.

V. By memorandum dated June 24, 1996, John K. Selden, Air Operations Officer at Roosevelt Roads, decided to remove Plaintiff from his employment effective June 24, 1996. Plaintiff was advised in this memorandum of his appeal rights to the Merit Systems Protection Board ("MSPB") and that he had 20 calendar days to do so.

W. On August 8, 1996, Plaintiff, by his attorney, mailed his appeal of the Navy's decision to terminate him to the MSPB. Although unlawful employment discrimination was not explicitly raised on appeal, Plaintiff stated that the agency made a mistake when it fired him after his knee injury and that such penalty was too harsh. He said he was fired as a result of suffering his injury.

X. On September 27, 1996, the MSPB Northeastern Regional Office ordered Plaintiff to show cause on or before October 11, 1996, as to why his appeal of the Navy's determination to terminate him should not be dismissed for being untimely.

Y. On November 7, 1996, Plaintiff submitted his position as to the issue of timeliness and on January 8, 1997, the agency submitted its response. On January 30, 1997, the MSPB issued its final decision dismissing Plaintiff's appeal as untimely. The decision advised Plaintiff of his right to file a review with the Board, as to

the date the initial decision would become final and to his appeal rights with the Court of Appeals for the Federal Circuit. Plaintiff never filed an appeal of that decision.

Z. On April 11, 1997, the Department of the Navy offered Plaintiff a position as Fire Communication Operator and advised him that a refusal to accept suitable employment can result in termination of Federal Employment Compensation Act (F.E.C.A.) benefits.

AA. By letter of April 17, 1997, the Department of Labor informed Plaintiff that he had a suitable job offer as fire communications operator with the Department of the Navy and warned him that if he failed to accept the offered position and failed to demonstrate that the failure is justified, his rights to further compensation would be jeopardized. Plaintiff was told that he would be given the difference, if any, between the pay of the offered position and the pay of his position as of the date of injury. Plaintiff was given 30 days to either accept the position or provide an explanation of the reasons for refusing it.

BB. Plaintiff accepted the position of Fire Communications Operator. By a memorandum dated May 5, 1997, the Human Resources Director, Israel Pagán advised the Air Operation Officer on the procedure to follow up on Plaintiff's return to work.

CC. On May 12, 1997, Plaintiff reported to work dressed wearing a firefighter polo shirt, short pants, and tennis shoes. He also brought a personal tape recorder. On even date, Plaintiff's supervisor, Feliciano told Plaintiff to change his clothing and he refused. Feliciano discussed with Plaintiff his new responsibilities and Plaintiff said that he could not perform most of the duties. Plaintiff also gave Feliciano three SF–71 forms requesting: eight hours of sick leave for May 22, 1997, eight hours of annual leave for May 29, 1997, and eight hours of sick leave for June 2, 1997.

DD. Feliciano contacted the Fire Chief, Bienvenido Burgos, Fire Chief, and told him that Plaintiff did not want to work regarding most of his duties. As per instructions of Angie Millán, from the agency's Office of Worker's Compensation, Plaintiff was told to leave until further notice.

EE. By way of letter dated May 13, 1997, Plaintiff's counsel Gino Negretti sent a letter to the Department of Labor alleging that Plaintiff "has been the object of a continuous pattern of discrimination based solely on his impairment, which is a clear violation of the Rehabilitation Act, 29 USC 706, 791–94 and the American[s] with Disabilities Act of 1990, 42 USC § 12101, et. seq. as amended."

FF. By letter dated May 13, 1997, Plaintiff's counsel Gino Negretti filed an Equal Employment Opportunity (EEO) pre-complaint with a counselor. The basis of alleged discrimination in the pre-complaint is due to Plaintiff's disability.

GG. By letter dated May 22, 1997, the Department of Labor recognized that the position offered to the Plaintiff required that he performed duties in a different duty station than where he used to work and that this would require him to travel to the main island of Puerto Rico from Vieques to fulfill his employment responsibilities. The Department of Labor requested from the Department of the Navy to provide information as to how many miles the Plaintiff would have to commute.

HH. By letter dated May 29, 1997, Angelica Millán of the Human Resources Office of the Department of the

Navy, responded to the May 22, 1997 Department of Labor letter. In this response, Millán states that the position available for Plaintiff was located on the main island of Puerto Rico and that Plaintiff resided in Vieques island, located 10 miles to the southeast. The letter explained the cost and time of commuting.

II. On June 24, 1997, Plaintiff filed a complaint with the EEOC alleging age and physical handicap discrimination. No mention was made regarding retaliation.

JJ. By memorandum dated July 15, 1997, Evelyn Cruz, the EEO Counselor, gave Plaintiff Notice of Final Interview of July 15, 1997. The memorandum referred to Plaintiff's allegations that he had been discriminated against due to his disability.

KK. In her August 25, 1997 report, Evelyn Cruz stated that during the informal counseling stage, Plaintiff did not define age as a basis for discrimination.

LL. On September 3, 1997, the Department of the Navy issued a Notice of Partial Acceptance/Dismissal dismissing Plaintiff's allegation that he was removed on June 24, 1996 for not accepting the position of Tools and Parts Attendant, because this claim was pursued under the Administrative Grievance Procedure.

MM. By letter dated September 18, 1997, Plaintiff filed an appeal on the dismissed issues with the EEOC.

NN. By letter dated November 28, 1997, the Department of Labor through the Office of Worker's Compensation Programs, referred Plaintiff for development of a vocational rehabilitation program.

OO. On December 15, 1998, the EEOC issued its decision affirming the agency's dismissal of the issues raised in appeal to the MSPB and which were dismissed as untimely.

PP. The return to work program states that if employees are permanently disabled, the Navy is committed to paying compensation for life.

## V. DISCUSSION

### A. Exhaustion of Administrative Remedies

Defendants move the Court to dismiss all claims before the Court which accrued on or before June 24, 1996. Defendants contend that it is uncontested that Plaintiff failed to exhaust administrative remedies pertaining to those claims in a timely manner. For the reasons that follow, the Court concludes that Plaintiff's claims up to June 24, 1996 are stale and that Plaintiff failed to exhaust administrative remedies.

The instant case is brought pursuant to section 2000e-16(c) of Title 42 of the United States Code, which provides for the right to a trial de novo once the plaintiff has exhausted the administrative remedies. *See Roman–Martinez v. Runyon,* 100 F.3d 213, 216 (1st Cir.1996) (citing *Brown v. General Serv. Admin.,* 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Jensen v. Frank,* 912 F.2d 517, 520 (1st Cir.1990); *McGuinness v. United States Postal Serv.,* 744 F.2d 1318, 1320 (7th Cir.1984)). In exhausting administrative claims, federal employees often have to make a choice before pursuing their claim: whether they will have their claims adjudicated by the MSPB, the EEOC or the entity, because once this decision is made the claimant must stay on that path. *See Chaney v. Rubin,* 986 F.Supp. 516, 520 (N.D.Ill.1997) (citing to *McAdams v. Reno,* 64 F.3d 1137, 1142 (8th Cir.1995)). Whether or not the claimant will have to make this choice, however, hinges on the type of case the claimant has.

A federal employee who seeks the review of an adverse civil service decision of his or her employer, such as a termination, may bring an appeal to the MSPB. *See* 5

U.S.C. §§ 1204, 7513(d), and 7701. The Civil Service Reform Act of 1978 created the MSPB to adjudicate such disputes between certain federal employees and federal employers. *See* 5 U.S.C. § 1204. Section 7511(a)(1) of Title 5 of the United States Code sets forth the requirements to be an eligible employee. In general terms, an eligible employee is an individual in a competitive service job who is not serving a probationary or trial period under an individual appointment and has completed at least one year of current continuous service. *See Anderson v. General Services Administration*, 56 M.S.P.R. 316, (1993), *aff'd* 12 F.3d 1069 (Fed.Cir.1993), *cert. denied* 512 U.S. 1204, 114 S.Ct. 2673, 129 L.Ed.2d 809 (1994). Jurisdiction to hear appeals from a civil service MSPB lies exclusively with the Court of Appeals for the Federal Circuit. *See Chaney*, 986 F.Supp. at 520.

If a federal employee, however, has a "mixed case," which is both a federal discrimination claim and a civil service claim, the Plaintiff has a choice to bring his case before the MSPB, the EEOC, or the employing agency. *See id.* Once that decision is made, the plaintiff is required to stay his course and exhaust his remedies before going to Court. *See id.* Regardless the path he or she chooses, appeals from agency decisions in mixed cases will be heard by the district courts. *See Ballentine v. Merit Systems Protection Bd.*, 738 F.2d 1244, 1245–46 (Fed.Cir.1984). In order to address the arguments of the parties, the Court first establishes whether Plaintiff's MSPB case was a civil service claim or a mixed claim.

 The evidence on the record suggests that Plaintiff's case before the MSPB was solely a civil service case. That is to say, that the MSPB did not have before it any issues pertaining to employment discrimination. The Initial Decision entered by the MSPB on January 30, 1997, ruling that Plaintiff's appeal was untimely, informed Plaintiff that he could appeal its decision to the Court of Appeals for the

Federal Circuit. Because the Federal Circuit has exclusive jurisdiction to hear civil service appeals from the MSPB, it follows that the issues before the MSPB had to be of a civil service nature. In view that Plaintiff's claim for discrimination was not a part of its administrative complaint before the MSPB, Plaintiff had yet to comply with exhausting these claims before the EEOC as it is a central principle that federal employees raising federal discrimination claims must exhaust all administrative remedies before filing a civil complaint in federal district court. *See Brown v. General Services Administration*, 425 U.S. 820, 832, · 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). With regards to claims before the EEOC, a Plaintiff has 45 days of the date of termination to contact an EEO counselor. *See* 29 C.F.R. § 1614.105(a)(1). In the instant case, it is uncontested that Plaintiff was first terminated from the Navy on June 24, 1996 and that Plaintiff failed to contact the EEO counselor within 45 days of that date. Therefore, Plaintiff's discrimination claims for events that transpired up to June 24, 1996 are barred from the instant complaint.

## B. Age Discrimination

 Next, Defendant argues that Plaintiff's claim under the Age Discrimination in Employment Act ("ADEA") should be dismissed because it is uncontested that he failed to file a timely administrative claim for age. A federal employee who claims to have been the victim of age discrimination has two procedural alternatives through which to pursue relief. He may file an administrative action with the EEOC or may file a civil complaint directly in federal district court. *See* 29 U.S.C. §§ 633a(b), 633a(c). As opposed to ADEA suits brought against non-federal employers, there is no specific period of limitations for ADEA suits brought against federal employers. In view of this congressional silence, several Courts of Appeals, including the First Circuit, have held that ADEA Plaintiffs

who opt for the administrative alternative must file the administrative charge for age discrimination claims within 90 days of the discriminatory event, a period identical with the Title VII period of limitations. *See* 42 U.S.C. § 2000e–16(c); *Edwards v. Shalala*, 64 F.3d 601 (11th Cir. 1995); *Long v. Frank*, 22 F.3d 54 (2d Cir.1994), *cert. denied*, 513 U.S. 1128, 115 S.Ct. 938, 130 L.Ed.2d 883 (1995); *Nunnally v. MacCausland*, 996 F.2d 1, 2 (1st Cir.1993); *Lavery v. Marsh*, 918 F.2d 1022 (1st Cir.1990).

Under the second alternative, bringing an ADEA suit directly in federal court, the requirement of an administrative filing with the EEOC is excused when the claimant files a notice of intent to sue under the ADEA within 180 days of an alleged discriminatory event and thereafter files the civil complaint within 30 days of the notice to sue. *See* 29 U.S.C. § 633a(d); *Stevens v. Dept. of Treasury* 500 U.S. 1, 111 S.Ct. 1562, 114 L.Ed.2d 1 (1991).

Plaintiff's first claim of discrimination relating to age came in June 12, 1997 when he filed a pre-complaint with the EEOC. It is clear that Plaintiff opted for the administrative route, as none of the documents filed on behalf of Plaintiff make any reference to the filing of a suit in federal court and there are no documents on the record to that effect. Therefore, the Court will determine the timeliness of Plaintiff's ADEA claim based on the 90 day period.

In his EEOC complaint process, Plaintiff's only reference regarding age discrimination was checking the age box in the form provided by the EEOC. However, this is not enough to exhaust his administrative remedies as, other than the checked box, there is no indication on the face of Plaintiff's formal complaint that he sought to pursue a claim for age discrimination. Merely checking a box arguing age discrimination and not elaborating those claims "does not fulfill the administrative purposes that a charge with the EEOC is designed to serve, and does not provide a basis for a later federal court discrimination complaint." *Mohan v. American Tel. & Telegraph Co.*, No. 97 C 7067, 1999 WL 495113, *9–10 (N.D.Ill. June 30, 1999). In order to bring a discrimination claim in federal district court that was not brought in the charge filed with the EEOC, a plaintiff must establish that "(1) the claim is like or reasonably related to the EEOC charges, and (2) the claim in the complaint reasonably could develop from the EEOC investigation into the original charges." *Id.* at *10 (citing *Harper v. Godfrey Co.* 45 F.3d 143, 148 (7th Cir.1995)); *see also Cable v. Ivy Tech State College*, 200 F.3d 467, 475–76 (7th Cir.1999). Plaintiff's EEOC complaint is devoid of references to age. His focus is on disability discrimination. Therefore, the Court will not entertain Plaintiff's ADEA claim due to his failure to exhaust administrative remedies.

## C. Claim for Retaliation

By the same token, Plaintiff's retaliation claim must also be dismissed. A complaint for retaliation may not be brought in federal court unless all administrative remedies are first exhausted. *See Johnson v. General Electric*, 840 F.2d 132, 139 (1st Cir.1988). Where the retaliatory act is claimed to have occurred prior to the filing of a charge, as is the case here, and the plaintiff fails to allege a retaliation claim in the subsequent charge, the retaliatory act will not reasonably relate to the charge. *See Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794 (10th Cir.1997); *cert. denied* 522 U.S. 935, 118 S.Ct. 342, 139 L.Ed.2d 266 (1997). In the charge Plaintiff filed with the EEOC, there was no mention regarding retaliation or even a check next to the box of "reprisal" in the form provided by the EEOC. Therefore, the EEOC had no indication that it had to carry out an investigation related to retaliation. In view of Plaintiff's failure to make this claim, the Court will also dismiss his retaliation claim.

### D. Disability Discrimination

With regards to Plaintiff's disability discrimination claims under the Rehabilitation Act, the only timely claims pertain to Plaintiff's rehiring in May 1997 as it is the only event falling within the 90 days leading up to his EEOC filing. *See* 42 U.S.C. § 2000e–16(c). Claims of disability discrimination under the Rehabilitation Act are governed by the procedure established in Title VII of the Civil Rights Act. *See Nunnally*, 996 F.2d at 2.

### 1. Continuing Pattern of Discrimination

Plaintiff has attempted to save his stale, pre-May 1997 claims by responding that he was the object of a continuous pattern of discrimination. Such equitable exception is inapplicable to the case at bar. Continuous violation is a common argument to excuse untimely filings, not failure to exhaust administrative complaint. It is an exception that arises when the alleged unlawful behavior is ongoing. *See Provencher v. CVS Pharmacy, Division of Melville Corp.*, 145 F.3d 5, 13 (1st Cir. 1998); *Sabree v. United Brotherhood of Carpenters and Joiners Local No. 33*, 921 F.2d 396 (1st Cir.1990). Ongoing unlawful behavior, however, is not synonymous and must not be mistaken with the continuing effects of a previous and discrete discriminatory act. *See Cajigas v. Banco de Ponce*, 741 F.2d 464, 469 (1st Cir.1984).

The First Circuit has formulated two types of continuing violations: serial violations and systemic violations. *See Jensen v. Frank*, 912 F.2d 517, 522 (1st Cir.1990). In the case at bar, Plaintiff does not address this distinction and does a sub-par job in addressing many of the issues raised by Defendant. After all, it is Plaintiff's burden to establish that a continuing violation has taken place. *See Muniz–Cabrero v. Ruiz*, 23 F.3d 607, 610 (1st Cir.1994). Despite his failure, the Court does not see why the continuous violation exception is applicable to this case at bar. In view of the evidence it is evident that Plaintiff should have realized, "at every turn, that

he was being discriminated against." *Provencher*, 145 F.3d at 14. A plaintiff who is aware of this discrimination has a duty to file within the statute of limitations period to avoid losing her claim. *See id.* at 13. The overarching purpose of the continuing violation theory is to permit "the inclusion of acts whose character as discriminatory were not apparent at the time they occurred." *Id.* at 15. Plaintiffs must be prompt and thrift in commencing litigation when they learn that they have been the victims of discrimination. Most, if not all, of Plaintiff's allegations pertaining to disability discrimination addressed distinct events in which Plaintiff's handicap was at issue. Thus, the Court is not compelled by Plaintiff's efforts to revive time-barred events and will not take them into consideration.

### 2. Timely Claims Under the Rehabilitation Act

In view that Plaintiff's only timely claims under the Rehabilitation Act pertain to his return in May 1997, the issue in this case is whether the Navy had to reasonably accommodate Plaintiff upon his return in May 1997 and whether Plaintiff was terminated because of his disability. As it relates to the summary judgment motion at bar, the issue is whether it is uncontested that the Navy did not have to accommodate Plaintiff and whether it is uncontested that Plaintiff was not terminated due to his disability.

Regardless of whether a complaint is filed against a federally funded entity under the Rehabilitation Act or against a private employer under the ADA, the standards for establishing liability for disability discrimination are the same. *See Myers v. Hose*, 50 F.3d 278, 281 (4th Cir.1995). In order to prosper in a Rehabilitation Act case, the plaintiff must establish that he or she is disabled. *See Cruz v. McAllister Brothers, Inc.*, 52 F.Supp.2d 269, 279 (D.Puerto Rico 1999) (citing to *Arnold v. United Parcel Service*, 136 F.3d 854, 856–59 (1st Cir.1998)). Therefore, it is essen-

tial to establish the scope of the term "disability" to rule on Defendant's motion. There are three ways in which an individual may be considered disabled: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(2). The first type of disability requires that the relevant impairment limit one or more major life activities of the afflicted person. Although the ADA does not define "major life activities," the Court relies on the EEOC Regulations, which define the term as " 'functions such as caring for oneself performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.' " *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir.1994) (citing to 29 C.F.R. § 1630.2(i)).

The concept "substantially limits" refers to the extent to which an impairment interferes with a major life activity. *See* 29 C.F.R. § 1630.2(j). Therefore, not only must the impairment affect a major life activity, but it must also substantially limit it. In particular, being substantially limited refers to being, "(i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition manner, or duration under which an individual can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). In addition, the following factors are considered to determine whether or not a major life activity is substantially limited: the nature and severity of the impairment, the length of time which the impairment is expected to continue and whether or not the impairment can be characterized as a long-term condition. *See* 29 C.F.R. § 1630.2(j)(2); *see also, Katz v. City Metal Co., Inc.*, 87 F.3d 26, 31 (1st Cir.1996). Therefore, determining whether a major life activity is substantially limited is a fact-specific analysis. *See Colwell v. Suffolk County Police Dept.*, 158 F.3d 635 (2d Cir.1998).

■ One relevant major life activity which can be considered in this analysis is working. With regards to being substantially limited in the major life activity of working, the plaintiff must demonstrate a "significant restriction in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Bolton v. Scrivner*, 36 F.3d at 942 (citations omitted). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.; see also Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723 (5th Cir.1995); *Welsh v. City of Tulsa*, 977 F.2d 1415 (10th Cir.1992); *Maulding v. Sullivan*, 961 F.2d 694 (8th Cir.1992).

■ Besides a showing of being disabled, the plaintiff must also be a "*qualified* individual with a disability." 42 U.S.C. § 12111(8) (emphasis added). An individual will be qualified if either with or without a reasonable accommodation, he or she can perform the essential functions of the job. *See Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *Quint v. Staley Manufacturing Co.*, 172 F.3d 1, 9 n. 3 (1st Cir.1999). That is to say, the Court must determine whether such individual "could perform the essential functions of the job," without an accommodation and if not, whether any reasonable accommodation by the employer would enable the individual to perform his or her essential job functions. *Tyndall v. National Education Centers Incorporated of California*, 31 F.3d 209, 213 (4th Cir.1994) (citing *Chandler v. City of Dallas*, 2 F.3d 1385, 1393–94 (5th Cir.1993)).

Although Defendants do not argue that Plaintiff is not disabled, they state that, as a matter of law, they exceeded their responsibility by offering him the job as a Fire Communications Operator in May of 1997, 11 months after he ceased to be an employee of the Navy, pursuant to its Return–to–Work policy. The Navy did not

have the obligation to re-employ Plaintiff, who rejected the position offered alleging that he could not physically comply with its requirements. The EEOC's ADA guidelines establish that reassignment to another job may be a reasonable accommodation. *See* 29 C.F.R. § 1630.2(*o*)(2)(ii). However, we are not dealing here with a reassignment. Plaintiff had already been reassigned to numerous jobs which he could not perform and was discharged for that reason and any cause of action derived therefrom is time-barred. What we are dealing with here is a case in which the Plaintiff was offered a job. The Navy did not have the obligation to hire Plaintiff as a Fire Communications Operator or provide him with any further accommodations.

 Even for employees who have not yet been dismissed, the Rehabilitation Act "does not require employers to modify the actual duties of a job in order to make an accommodation for individuals who are not physically capable of performing them." *Dyer v. Jefferson County School Dist. R–1*, 905 F.Supp. 864, 869 (D. Colo. 1995). The factual situation is still more in favor of the Defendants because the Plaintiff, at the time he was offered the position in May 1997, was not the Navy's employee. Therefore, if the Navy did not have the legal obligation to extend an offer of employment to the Plaintiff, it had less of an obligation to accommodate Plaintiff if he did not accept the job offered. To hold otherwise would create a disincentive for employers to offer jobs to ex-employees when they are not legally bound to do so. Therefore, Plaintiff's position that the Navy had the obligation to accommodate him upon his refusal to accept this job is illogical. The Navy was offering Plaintiff the position in question and no other. In view of the above, the Court finds that Plaintiff's claim under the Rehabilitation Act for failure to accommodate him in May 1997 is hereby dismissed.

### 3. Timely Claim for Discharge Under Rehabilitation Act

 In the same way, there is no evidence on the record for the proposition that Plaintiff's discharge of May 1997 was driven by a discriminatory animus. Furthermore, Plaintiff is not a qualified individual as it is uncontested that Plaintiff could not perform the essential duties of the job offered to him. *See* 42 U.S.C. § 12111(8). In view of the above, Plaintiff's Rehabilitation Act claim for discriminatory dismissal in hereby dismissed.

### E. Proper Defendants

Next, the Court will consider whether or not the Secretary of the Navy is the only proper party defendant. Plaintiff has sued Israel Pagán, Efraín Feliciano, Pedro Ayala, and Bienvenido Burgos. Defendants argue that, as a matter of law, Richard Danzig, in his official capacity as Secretary of the Navy, is the only proper party defendant to this case. Plaintiff states that because he has also brought a claim under 42 U.S.C. § 1983, he can still keep the other co-Defendants in the Complaint. Yet, in establishing the timeliness of a constitutional tort, the Court should look to the state statute for personal injury actions, which in this case is one year. *See Owens v. Okure*, 488 U.S. 235, 236, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); P.R.Laws Ann. tit. 31, § 5298. The relevant events narrated by Plaintiff in his complaint which could potentially create a cause of action under section 1983 occurred on or before May 1997. The Complaint in this case was filed on January 11, 1999, and is therefore time-barred. The Court will therefore dismiss Plaintiff's section 1983 claim.

### F. Pendent State Law Claims

 Plaintiff cites to several local statutes in his Complaint, namely the local equivalent of the ADA, P.R.Laws Ann. tit. 4, § 501 ("Law 44"); the local equivalent of Title VII, P.R.Laws Ann. tit. 29, § 146, and Puerto Rico's Wrongful Dismissal Act, P.R.Laws Ann. tit., § 185a. Plaintiff also cites to Article II, Section I of the Puerto

Rico Constitution, but fails to substantiate what this section provides.[6] Because the federal claims brought by Plaintiff have been dismissed, the Court will also dismiss the pendent claims under Puerto Rico law. Even if Plaintiff's claims under federal law had survived summary judgment they would still be dismissed.

Because Plaintiff is a former federal employee and has sued Richard Danzig, the Secretary of the Navy, due to events allegedly arising from his federal employment, his suit is against the United States. Therefore, this suit is within the exclusive jurisdiction of the federal courts. *See* 28 U.S.C. § 1346(b). However, it is hornbook law that "the United States, as a sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *See Cruz Lopez v. Puerto Rico Air National Guard,* No. Civ. 96–2358(PG), 1998 WL 136425, *2 (D.Puerto Rico March 23, 1998) (citations omitted). Although the federal government has waived its sovereign immunity for suits under the Rehabilitation Act, it has not done so for Puerto Rico discrimination laws. *See id.* (citing 42 U.S.C. § 2000e–16). In view of the above, the Court hereby dismisses Plaintiff's claims under Puerto Rico law.

## VI. CONCLUSION

In view of the analysis, the Court hereby **GRANTS** Defendants' Motion to Dismiss and Motion for Summary Judgment and hereby **DISMISSES** Plaintiff's complaint with prejudice.

**IT IS SO ORDERED.**

---

6. Article II, section 1 of the Puerto Rico Constitution states, in relevant part, "[t]he dignity of the human being in inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin, or condition, or political or religious ideas."